IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

DOROTHY L. "SANDY" BOLLEN                                             PLAINTIFF

V.                                    4:06CV00269 JMM

ARKANSAS DEPARTMENT OF HUMAN
SERVICES, An Agency of the State of
Arkansas; ET AL                                                       DEFENDANTS

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pending is the Defendants' Motion for Summary Judgment. Plaintiff has responded and the Defendants have replied. Although the Court is troubled by the contemptuous tone of the Defendants' briefs, the Motion is GRANTED.

I. Facts

The Department of Volunteerism ("DOV") is one of 10 programmatic divisions within the Arkansas Department of Human Services ("DHS"). The mission of the DOV is to promote and support service and volunteering in Arkansas. Plaintiff, a 57 year old white female, was an employee of the DHS/DOV. Her role in DOV was a Program Development Assistance and Training Coordinator for the Arkansas Service Commission, which is a level 23 program administration position. Plaintiff had served in this position since 1999.

Defendant Albert Schneider serves as the Executive Director of the Arkansas Service Commission in the DHS/DOV. Mr. Schneider is a 64-year old white male. Defendant Sherry Anderson serves as the Director of the DHS/DOV. Anderson is a 50-year old white female. She is Schneider's direct supervisor.

In March 2005, Schneider scheduled a time to meet with Plaintiff to perform a job evaluation pursuant to the DHS Career Ladder Incentive Program ("CLIP"). Each CLIP rating

period began on April 1st of one calendar year and ended on March 31st of the following year. Schneider set the meeting for Thursday, March 31st. All other DOV employees received their performance reviews at or near the same time, but none after April 1st. Plaintiff sent numerous e-mail messages to Schneider and Anderson protesting that the time of her evaluation was not good because of a training event due to begin days later. Plaintiff contends that her evaluation could have been scheduled at an earlier time but for the discriminatory animus of those running the department.

Plaintiff sent an e-mail to Anderson and Schneider stating that she did not feel it was in her best interest to meet with her supervisor and stated that she would consult an attorney. (Bollen Email, Ex. 5). Anderson responded to the e-mail and advised Plaintiff that her meeting would take place as scheduled and expressed disappointment that the scheduling of this meeting was causing so much trouble. (Anderson Email, Ex. 5). Plaintiff continued with additional complaints regarding her evaluation in an e-mail in which she stated that she was being harassed and treated with hostility and intimidation. (Bollen Email, Ex. 6). Anderson responded that Plaintiff should stop wasting time complaining about the meeting. She stated that the scheduling of the meeting was not a "personal issue" and she should get back to work. (Anderson Email, Ex. 6).

On March 31st, Plaintiff sent another e-mail to Anderson. Plaintiff copied Anderson's supervisor, Janie Huddleston, and Schneider on the e-mail. In this e-mail, Plaintiff stated that she did not feel comfortable meeting with Schneider and a third-party representative during her evaluation. She reiterated that she felt she was not treated fairly and asked to be transferred to another division of DHS. (Bollen Email, Ex. 7). Anderson responded stating that Plaintiff had

misconstrued certain comments and reiterated that Plaintiff's evaluation would take place as scheduled with Schneider and Melissa Sweeney as a third party representative. (Anderson Email, Ex. 8). Again, Plaintiff responded to Anderson and stated that her complaints had nothing to do with her evaluation. Instead, Plaintiff stated that she had been treated unfairly and gave examples of other times she was expected to attend meetings when she had a large workload. She copied Anderson's supervisor and Schneider on this e-mail also. (Bollen Email, Ex. 8).

Plaintiff's evaluation began at 10:00 a.m. on March 31st and ended at 10:13 a.m. Plaintiff received an overall rating of 4, down approximately .65 points from the baseline and midterm rating, corresponding to an overall rating of "exceeds standards." During the meeting, Schneider informed Plaintiff that her conduct in sending numerous e-mail messages after being told not to had brought the consequence of disciplinary action. Plaintiff had been disciplined on August 24, 2004 for sending other alleged inappropriate e-mail messages outside DHS. Further, Plaintiff failed to receive a CLIP bonus for the rating period because she failed to complete a CLIP plan.

Plaintiff responded in writing to the evaluation session in which she had received a written warning. She stated that she felt that Schneider had been "vicious, cold hearted and [had the] character of someone with a self-centered personality" with respect to her pet's death. (Bollen memo, Ex. 15). At a meeting on Friday, April 1, 2005, Schneider presented Plaintiff with the disciplinary statement. It stated that Plaintiff had violated DHS policy 1085, standards 11 and 25 which related to insubordination and interruption of the flow of work.

Bollen filed a grievance over her performance review and the disciplinary action despite being told that she was ineligible to grieve any matter because DHS policy at that time did not

allow persons in Grade 23 positions to grieve. Plaintiff alleges that Schneider told her she had no avenue of appeal whatsoever. Schneider denies this allegation.

On April 10, 2005, Plaintiff submitted her monthly report for March. Monthly reports are due from all DHS/DOV and Arkansas Service Commission employees to provide supervisors with important information on progress in each employee's duty areas. In her March report, Plaintiff included information on a training event that was held in April instead of March, the time covered by the report. In addition, she used the report as a vehicle to complain about the timing of her evaluation, the low ratings she had received, the discipline administered in the days before, her working conditions, the performance of other DOV employees and similar matters. (Monthly Report, Ex. 13). Schneider felt that Plaintiff had abused the monthly report form by making it a vehicle for conveying complaints rather than providing information such as number of attendees and evaluation ratings by those who received training. Therefore, Schneider issued Plaintiff another disciplinary statement.

The cause for the disciplinary action was listed as follows: "In a continuation of behavior noted in the disciplinary action statement of Apr.1, you submitted on Apr.10, 2005 a DOV monthly report that was insubordinate in tone and content, covering a training event outside the time frame in order to pursue your personal agenda, thus disrupting the work flow of managers." (Disc. Susp., Ex. 13). The disciplinary statement noted that there had been a previous warning on April 1, 2005 with a total of three discipline points.

The consequence of the April 19th disciplinary action was suspension without pay for five days. By DHS Policy, the minimum suspension for non-exempt employees was five days. The employee conduct expected in the future was described as follows: "In the future you will be

expected to communicate factually and respectfully, verbally and in writing in the context of the workplace." (Disc. Susp., Ex. 13).  She was also informed in writing and verbally that the consequence of another breach of DHS conduct standards would result in demotion or discharge.  With this disciplinary step, Plaintiff received another six points for a total of nine during the performance period.

On or about April 21, 2005, Plaintiff submitted an affidavit in support of a former co-worker's Title VII lawsuit against the Defendants.  Chrystal Gray alleged that Defendant Anderson discriminated against Gray and other African American females by terminating them or transferring them from Anderson's Department.  *Gray v. Arkansas Human Service, et al*, 4:04CV00490 JLH.

During the remainder of April and the month of May 2005, Schneider called several examples of substandard work to Plaintiff's attention, including missing the closeout deadline for the federal grant she administered, attempting to send the closeout materials to Washington, D.C. without Schneider's required signature and by surface mail instead of sending the materials by Federal Express, incorrectly stating the grant officer's name, poorly written materials, mistaken addresses on mailings, incorrect mathematical calculations and similar problems.

Schneider addressed these problems with Plaintiff and sent her an e-mail communication on May 13th reiterating his expectations of her work product. (Schneider Email, Ex. 17).  Plaintiff responded that she wondered if all Commission staff and DOV employees were required to adhere to this same policy. (Bollen Email, Ex. 17).  Schneider replied that his policies were not new and Plaintiff should cease such correspondence immediately. (Schneider Email, Ex. 18).        Subsequently, Plaintiff sent an e-mail to Schneider and copied the

Director of DHS, Kurt Knickrehm, stating in part: "Harassment has not seized [sic] since I went to EEOC. Your email today 'In summary, I expect an end to this kind of correspondence immediately,' was taken as a threat." (Bollen Email, Ex. 19).

On June 13, 2005, Schneider met with Plaintiff and Abbie Palmer of the personnel department. After discussing the first two points of the meeting, Plaintiff accused Schneider of continued harassment and left the meeting. In a written memorandum, Schneider discussed each of Plaintiff's complaints and reiterated his expectations of her. He concluded by warning Plaintiff that one further conduct violation would result in termination. (Schneider memo, Ex. 20).

In July 2005, Schneider began communicating with Plaintiff regarding her PPES scores for the mid-term baseline and for purposes of CLIP for the 2005-2006 rating period. When presented with baseline criteria for her performance evaluation in 2005-2006, Plaintiff refused to sign the form. Plaintiff stated that she felt she could not sign because she disagreed with two ratings of "2" on her 2004-2005 performance evaluation. Schneider met with Plaintiff on September 2, and September 30, 2005 to discuss the baseline PPES issue. Plaintiff again argued her 2004-2005 rating and Schneider explained the appeal process. Plaintiff claimed that the work environment was hostile. She claimed that she had experienced problems with Schneider since she began at DOV and the problems had worsened in the last year and a half. Ultimately, Plaintiff again refused to sign the PPES form.

Plaintiff followed up the meeting with an e-mail message to Melissa Sweeney with copies to Schneider, Anderson, and John Selig, current Director of DHS. In the message, she stated, in relevant part, that she would like to have a meeting to discuss transfer, removal or

reassignment to another DHS department. (Bollen Email, Ex. 29). After further e-mail communication between Plaintiff, Sweeney and Anderson, Plaintiff sent an e-mail to Janie Huddleston, John Selig, and Gina Powell with copies to Schneider and Anderson. In this e-mail, Plaintiff made many allegations about her work environment including an allegation of sexual harassment by a co-worker. (Bollen Email, Ex. 30).

Anderson and Schneider immediately informed the appropriate individual at DHS to begin an investigation of Plaintiff's sexual harassment allegation. Plaintiff alleged that a co-worker, Jim Abson, had sexually harassed her on three occasions. During the course of the investigation, several female employees noted that Abson was a "touchy, feely" person and they did not take offense to it. Two female employees, Selena Ellis and Arthurine Harris, stated that Abson had made them uncomfortable on one occasion by touching them.

Abson denied ever inappropriately touching or hugging Plaintiff. There were no witnesses to confirm or deny Plaintiff's allegations. The investigation was completed and a report was filed in February of 2006. Plaintiff's allegations of sexual misconduct were not corroborated and the report was deemed unfounded. (Internal Affairs Report, Ex. 35).

Plaintiff was discharged in February, 2006 after the investigation was completed. Defendants claim that Plaintiff's repeated violation of DHS policy and 1085.1.1 "minimum conduct standards," specifically insubordination and disrupting other employees' work, resulted in a disciplinary statement in which Plaintiff accrued an additional eight points, taking her over the 13 point maximum for a twelve month period. Pursuant to DHS policy 1084.3.3, Plaintiff was terminated.

Since her termination, Plaintiff has exercised her right to grieve her discharge.[1] On November 15, 2006, the State Grievance Appeal Panel made the following finding:

> The record was inadequate to show by a preponderance of the evidence that proper procedure was followed.  We cannot uphold the termination.  Ms. Bollen should be reinstated at DHHS in a department other than the Division of Volunteerism and the disciplinary action resulting in the termination should be removed from her record.

(Pl.'s Ex. H).  DHS appealed the Panel's finding to the Director of DHS, John Selig.  Selig reversed the Panel's decision and upheld the Agency's decision as an appropriate exercise of management discretion.  Selig found that the Agency followed its policy "to the letter both progressively and in accordance with the point system."  (Pl's Ex. H).

Plaintiff filed suit against the Defendants on March 1, 2006, alleging hostile work environment/sexual harassment and retaliation under Title VII, the ACRA, and 42 U.S.C. § 1983 in violation of the Fourteenth Amendment, age discrimination under the ADEA, and pendent state law claims.

Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds.  *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987);  Fed. R. Civ. P. 56.  The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

---

[1] The right to grieve had been granted to many in grade 23 positions in the interim by DHS policy.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*, '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted)(brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

Title VII Claims

Plaintiff claims her rights under Title VII were violated by the Defendants when her sexual harassment complaint was not addressed and when she was retaliated against for reporting sexual harassment and for supporting Mrs. Gray's race discrimination claim. Defendants claim they are entitled to Eleventh Amendment immunity. To the extent the plaintiffs' claims are against ADHS, they must be dismissed, but claims against the directors in

their official capacity are not barred by the Eleventh Amendment. *Pediatric Specialty Care, Inc. v. Arkansas Dept. of Human Services,* 443 F.3d 1005, 1017 (8th Cir. 2006). While under the doctrine set forth in *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), state officials may be sued in their official capacities for prospective injunctive relief without violating the Eleventh Amendment, the same doctrine does not extend to states or state agencies. *See Pediatric Specialty Care, Inc. v. Ark. Dep't of Human Servs.*, 443 F.3d 1005, 1017 (8th Cir.2006), vacated on other grounds, --- U.S. ----, 127 S.Ct. 3000, --- L.Ed.2d ---- (2007) (recognizing that only state officials, as opposed to state agencies, can be sued for prospective injunctive relief and dismissing claims against state agency); *see also Kentucky v. Graham*, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); Alabama v. Pugh, 438 U.S. 781, 781-82, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). Accordingly, Plaintiff's Title VII claims against DHS are barred by the Eleventh Amendment. Title VII claims against Selig, Anderson, and Schneider in their individual capacities are dismissed because supervisory employees are not individually liable under Title VII." *Bonomolo-Hagen v. Clay Central-Everly Community Sch. Dist.*, 121 F.3d 446, 447 (8th Cir.1997) (citing *Spencer v. Ripley County State Bank*, 123 F.3d 690, 691-92 (8th Cir.1997) (per curiam)). However, Plaintiff's claims for prospective injunctive relief against Selig, Anderson, Schneider and Abson in their official capacity based upon sexual harassment and retaliation are not barred by the Eleventh Amendment.

In order to make a prima facie case of sexual harassment, Plaintiff must show that she was "'subjected to unwelcome sex-based harassment that was sufficiently severe or pervasive to alter a term, condition, or privilege of her employment.'" *Merritt v. Albemarle Corp.*, 496 F.3d 880, 883 (8th Cir. 2007)(quoting *Cheshewalla v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th

Cir.2005). Plaintiff states that Abson touched her on three separate occasions. On one occasion, Abson hugged Plaintiff from behind and his hand made contact with her breast. Abson told her after the hug that he had wanted to let her know that he loved her. Plaintiff alleged that Abson hugged her on another occasion and that she held herself in a way to prevent contact with her breasts. Plaintiff further alleged that Abson touched her back while passing in the hallway and pressed into her skin where her bra strap met her back. (Bollen statement, Ex. 33). This alleged conduct by Abson is not sufficiently severe or pervasive to alter a term or condition of Plaintiff's employment. *See Duncan v. General Motors Corp.*, 300 F.3d 928 (8th Cir.2002). Therefore, Plaintiff's sexual harassment/hostile work environment claim must fail. Moreover, it is undisputed that immediately following Plaintiff's report of the sexual harassment, DHS began an investigation and the alleged harassment ceased.

Plaintiff alleges that she was retaliated against for reporting the alleged sexual harassment. To establish a prima facie case of retaliation, Plaintiff has the burden to show that she engaged in protected activity, that the Defendants took adverse action against her, and that there was a causal connection between those two actions. *Montandon v. Farmland Indus., Inc.*, 116 F.3d 355, 359 (8th Cir.1997). It is clear that Plaintiff engaged in protected activity when she reported the allegations against Abson and that the Defendants took adverse action against her by terminating her employment. However, there is no evidence of a causal connection between the two events. Plaintiff had already accumulated a large number of disciplinary points at the time that she made the report.

Plaintiff also alleges that she was retaliated against for supporting her friend and former co-worker, Chrystal Gray. Again, Plaintiff has the burden to show that she engaged in protected

11

activity, that the Defendants took adverse action against her, and that there was a causal connection between those two actions. *Montandon v. Farmland Indus., Inc*., 116 F.3d 355, 359 (8th Cir.1997). Plaintiff's support of Ms. Gray's lawsuit and her complaints about Ms. Gray's transfer and subsequent termination based upon racial discrimination are protected activities. The disciplinary actions taken against Plaintiff and her termination certainly qualify as adverse employment actions. Again, however the evidence supporting a causal connection between the two is insufficient.

Defendants' claim Plaintiff was terminated for sending insubordinate emails and accumulating thirteen disciplinary points in a twelve-month period. Plaintiff does not deny the content of the e-mails or that she sent them. Further, Plaintiff began receiving disciplinary statements for similar e-mail incidents in August 2004 before Ms. Gray had even filed suit against the Defendants. Plaintiff had accumulated nine of the thirteen disciplinary points before she submitted her affidavit in support of Ms. Gray's lawsuit on April 21, 2005. Moreover, Plaintiff was not terminated until February 2006. The cases that have accepted temporal proximity alone as sufficient to create an inference of a causal link have uniformly held that the temporal proximity must be "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (citing cases in which a three-month period and a four-month period, respectively, were insufficient to establish a causal link); *see Dhyne v. Meiners Thriftway, Inc.*, 184 F.3d 983, 989 (8th Cir.1999) (stating that a four-month gap, standing alone, weakened the showing of a causal link in a retaliation claim). Here, over nine months passed between Plaintiff's filing of her affidavit and her discharge. This passage of time is insufficient to show, and in fact weakens the showing of, the required causal link. *Wallace v.*

*Sparks Health System,* 415 F.3d 853, 859 (8th Cir. 2005).  Therefore, Defendants' motion for summary judgment is granted as to all of Plaintiff's Title VII claims.

      Fourteenth Amendment Claims

The elements of a claim of intentional discrimination are essentially the same under Title VII and the Constitution. *See Briggs v. Anderson*, 796 F.2d 1009, 1021 (8th Cir.1986).  As stated above, the Court finds that Plaintiff has failed to set forth a prima facie case of sexual harassment/hostile work environment or retaliation under Title VII.  Therefore, Plaintiff's Fourteenth Amendment claims are also dismissed.

      Plaintiff's ADEA Claims

The ADEA does not abrogate Eleventh Amendment immunity and, even if it purported to, it could not have been enacted pursuant to the power of Congress under Section 5 of the Fourteenth Amendment.  *Goss v. Arkansas*, 164 F.3d 430, 431 (8th Cir. 1999).  Therefore, Plaintiff cannot pursue her ADEA claim against the ADHS or any of the Defendants in their official capacity.  Further, employees, including supervisors, are not liable under the ADEA.  *See* 29 U.S.C. § 623(a)(1)*(*The ADEA makes it "unlawful for an *employer* . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."); *See also Lenhardt v. Basic Institute of Technology, Inc.*, 55 F.3d 377, 381 (8th Cir.1995) (employees not liable under Title VII in their individual capacities).

Regardless, Plaintiff has failed to state a claim under the ADEA.  Plaintiff has not provided any  evidence that she was disciplined or terminated based upon her age.  Plaintiff was over 40 when she was hired for her position.  Her supervisors, Schneider and Anderson, are both

over 40 years old. These facts run counter to any reasonable inference of discrimination based on age. *Rothmeier v. Investment Advisers, Inc.,* 85 F.3d 1328, 1337 (8th Cir. 1996)(citing *Lowe v. J.B. Hunt Transp., Inc*., 963 F.2d 173, 175 (8th Cir.1992) ("It is simply incredible, in light of the weakness of plaintiff's evidence otherwise, that the company officials who hired him at age fifty-one had suddenly developed an aversion to older people less than two years later."); Proud v. Stone, 945 F.2d 796, 797 (4th Cir.1991) ("[I]n cases where the hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer.")) Further, there is no allegation that Plaintiff was replaced with a younger employee and no evidence of any age-based animus. Therefore, the Court finds that the evidence is insufficient for a reasonable jury to find age discrimination. Accordingly, Defendants' motion for summary judgment of Plaintiff's ADEA claim is granted.

### The First Amendment

The Court notes that the parties have argued about a First Amendment retaliation claim. However, the Court has thoroughly reviewed the First Amended Complaint and finds that the Plaintiff has failed to plead a First Amendment retaliation claim. Therefore, the Court will not consider the parties' arguments on this point.

### State Law Claims

Because granted summary judgment has been granted as to all of Plaintiff's federal claims, the Court declines to exercise pendent jurisdiction over the Plaintiff's state law claims. *See Burk v. Beene*  948 F.2d 489, 495-96 (8th Cir. 1991)("[W]e note that the court had disposed of the federal claims before addressing the state claim, and should have refused to exercise

jurisdiction over the state claim as pendent jurisdiction over the state claim in federal court was destroyed with the loss of the federal claims.")

In conclusion, Defendants' Motion for Summary Judgment (Docket # 28) is GRANTED. Plaintiff's Motion to Amend Complaint (Docket # 49) is DENIED as moot. The Clerk is directed to close the case.

IT IS SO ORDERED this 31st day of October 2007.

_____
James M. Moody
United States District Judge